336 F.3d 885
 SOUTHERN CALIFORNIA GAS COMPANY, a California Utility Corporation, Plaintiff-Appellee,
v.
CITY OF SANTA ANA, a Municipal Corporation, Defendant-Appellant.
Southern California Gas Company, a California Utility Corporation, Plaintiff-Appellee,
v.
City of Santa Ana, a Municipal Corporation, Defendant-Appellant.
 No. 02-55885.
 No. 02-56298.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 2003.
 Filed July 14, 2003.
 
 Benjamin Kaufman, Chief Assistant City Attorney, Santa Ana, CA, for defendant-appellant.
 David A. Battaglia, Gibson, Dunn & Crutcher, Los Angeles, CA, for plaintiff-appellee.
 Martin L. Greenman, Deputy City Attorney, San Francisco, CA, for amici curiae, City and County of San Francisco, et al.
 Clifford E. Yin, Coblentz, Patch, Duffy & Bass, San Francisco, CA, for amicus curiae, Pacific Gas and Electric Co.; Richard Tom, Southern California Edison Co, Rosemead, CA, for amicus curiae; Kevin B. Belford, American Gas Association, Washington, DC, for amicus curiae; Henry D. Bartholomot, Edison Electric Institute, Washington, DC, for amicus curiae.
 Appeal from the United States District Court for the Central District of California; George H. King, District Judge, Presiding. D.C. No. CV-02-00658-GHK.
 Before HALL, THOMAS, and PAEZ, Circuit Judges.
 PER CURIAM Opinion; Concurrence by Judge THOMAS.
 OPINION
 PER CURIAM.
 
 
 1
 The City of Santa Ana appeals an order of the district court granting summary judgment in favor of the Southern California Gas Company. The district court held that the City's trench cut fee could not be constitutionally applied to the Gas Company, because such an application would violate the Contracts Clause of the federal constitution. See U.S. Const. art. I, § 10, cl. 1. We affirm the district court's order granting summary judgment in favor of the Gas Company, and adopt the district court's opinion, Southern California Gas v. City of Santa Ana, 202 F.Supp.2d 1129 (C.D.Cal.2002), as our own. See Appendix infra.
 
 
 2
 We also affirm the district court's award of attorney's fees in favor of the Gas Company pursuant to 42 U.S.C. § 1988. We reject the City's argument that the Gas Company was not a "prevailing party" pursuant to section 1988.
 
 
 3
 A prevailing party in a section 1983 action is eligible for an award of attorney's fees under section 1988. See 42 U.S.C. § 1988(b). The Gas Company's complaint specifically stated that its Contracts Clause claim was "brought pursuant to 42 U.S.C. § 1983 and related California law." The City's argument that section 1983 provides no relief for a party deprived of its rights under the Contracts Clause is without merit. Section 1983 provides for liability against any person acting under color of law who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The rights guaranteed by section 1983 are "liberally and beneficently construed." Dennis v. Higgins, 498 U.S. 439, 443, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) (quoting Monell v. Department of Social Services, 436 U.S. 658, 684, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The right of a party not to have a State, or a political subdivision thereof, impair its obligations of contract is a right secured by the first article of the United States Constitution. A deprivation of that right may therefore give rise to a cause of action under section 1983.
 
 
 4
 The Supreme Court's decision in Carter v. Greenhow, 114 U.S. 317, 5 S.Ct. 928, 29 L.Ed. 202 (1885), is not to the contrary. The Supreme Court has explicitly given Carter a narrow reading and rejected the interpretation advanced by the City. See Dennis, 498 U.S. at 451 n. 9, 111 S.Ct. 865 (stating that Carter can only be read to have "held as a matter of pleading that the particular cause of action set up in the plaintiff's pleading was in contract and was not to redress deprivation of the right secured to him by that clause of the Constitution [the contract clause], to which he had chosen not to resort.") (emphasis added) (internal quotations and citations omitted).
 
 
 5
 We therefore find that the district court acted well within its discretion by awarding the Gas Company attorney's fees.
 
 
 6
 AFFIRMED.
 
 
 Appendix
 
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF CALIFORNIA
 
 7
 SOUTHERN CALIFORNIA GAS COMPANY, Plaintiff,
 
 
 8
 v.
 
 
 9
 CITY OF SANTA ANA, Defendant.
 
 CV 02-00658-GHK(BQRx)
 
 10
 MEMORANDUM AND ORDER RE: MOTION TO DISMISS & MOTION FOR PARTIAL SUMMARY JUDGMENT
 
 
 11
 This matter is before the court on the above-titled motions. After fully considering the parties' papers and oral argument on April 22, 2002, we rule as follows:
 
 I. Background
 
 12
 In 1938, the City of Santa Ana ("Santa Ana") adopted an ordinance granting the Southern California Gas Company[1] ("Gas Company") the right to construct and maintain "pipes and appurtenances" under city streets. See Santa Ana, Cal., Ordinance No. 1061 (March 21, 1938) ("1938 Franchise") § 1(f) (defining "pipes and appurtenances" to include anything "located or to be located ... under ... the streets of the City") & § 2 ("to lay and use pipes and appurtenances ... under ... the streets").[2] In exchange, the Gas Company pays Santa Ana a percentage of its gross annual receipts. Id. § 3.
 
 
 13
 The Gas Company, "where practicable and economically reasonable shall" lay pipe "by a tunnel or bore, so as not to disturb the foundation" of city streets. Id. § 9, at ¶ 2. If, on the other hand, the Gas Company performs trench work or excavations, it must do so "under a permit to be granted by the Engineer upon application therefor." Id. If "any portion of any street" is damaged, the Gas Company "shall, at its own cost and expense, immediately repair any such damage and restore such street, or portion of street, to as good a condition as existed before such defect or other cause of damage occurred, such work to be done under the direction of the Engineer, and to his reasonable satisfaction." Id. § 10. Santa Ana can demand the Gas Company adequately and timely repair streets or forfeit the franchise. Id. § 11.
 
 
 14
 In general, the Gas Company's rights under the 1938 Franchise are subject to "all of the ordinances, rules and regulations heretofore or hereafter adopted by the legislative body of the City in the exercise of its police powers...." Id. § 8(a). Santa Ana may also "demand[] the cost of all repairs to public property made necessary by any operations of" the Gas Company. Id. § 8(b).
 
 
 15
 In October 2001, Santa Ana adopted a resolution and ordinance, which are the subject of this action. Santa Ana, Cal., Resolution No.2001-063 (October 1, 2001) & Ordinance No. NS-2480 (October 15, 2001) (hereinafter collectively the "trench cut ordinance"). With certain exceptions, the trench cut ordinance requires advance payment by anyone wishing to perform excavations or trench cuts. The Gas Company contends the trench cut ordinance: (1) substantially impairs its rights under the 1938 Franchise in violation of the Contract Clause, (2) constitutes an uncompensated taking in violation of the Fifth and Fourteenth Amendments, and (3) is arbitrary and capricious in contravention of the Fourteenth Amendment's substantive due process clause.[3]
 
 II. Procedural Posture
 
 16
 Santa Ana moves to dismiss the Gas Company's federal claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Gas Company seeks partial summary judgment on the Contract Clause claim pursuant to Rule 56. While we normally consider motions to dismiss first, the parties rely largely on the same evidence for both motions. In addition, the motion for partial summary judgment is potentially dispositive of this action. Pl.'s Mot. for Partial Sum. J. ("Pl.'s Mot."), p. 1 n. 1 (stipulating and moving to dismiss remaining claims without prejudice should its motion be granted). Therefore, we consider Plaintiff's motion first.
 
 III. Summary Judgment Standard
 
 17
 Viewing the evidence in the light most favorable to Santa Ana, we must determine whether a dispute exists as to any material fact, and whether the Gas Company is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; see, e.g., Toscano v. Prof'l Golfers' Ass'n, 258 F.3d 978, 982 (9th Cir.2001). As the party with the burden of persuasion at trial, the Gas Company must establish "beyond controversy every essential element of its" Contract Clause claim. See, e.g., William W Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 14:124-127 (2001). Santa Ana can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor. See, e.g., Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998).
 
 
 18
 We may grant summary judgment motions touching upon contract interpretation when the agreement is unambiguous. See San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd., 132 F.3d 1303, 1307 (9th Cir.1997). Ambiguity is a question of law for the court. Maffei v. N. Ins. Co. of N.Y., 12 F.3d 892, 898 (9th Cir.1993). While we ordinarily hesitate to grant summary judgment when a contract is ambiguous, there is no "rigid rule prohibiting reference to extrinsic evidence in resolving a contractual ambiguity on a summary judgment motion." San Diego Gas & Elec. Co., 132 F.3d at 1307. We may still consider whether, construing the evidence in the nonmovant's favor, the ambiguity can be resolved consistent with the nonmovant's position. Id.
 
 
 19
 A party opposing summary judgment must direct our attention to specific, triable facts. See Cal. Practice Guide: Federal Civil Procedure Before Trial § 14:101.1, at 14-24.2. General references without page or line numbers are not sufficiently specific. Id. (citing Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir.1988)); see also Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir.2001) (citing similar holdings in the Fifth, Sixth, Seventh, and Tenth Circuits); Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir.1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.").
 
 IV. Contract Clause Analysis
 
 20
 "No State shall ... pass any ... law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. Though written in absolute terms, the Supreme Court narrowly construes the Contract Clause to ensure that local governments can effectively exercise their police powers. Seltzer v. Cochrane, 104 F.3d 234, 235 (9th Cir.1996). State governmental entities "must possess broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result." United States Trust Co. v. New Jersey, 431 U.S. 1, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (hereafter "U.S. Trust"). However, a "higher level of scrutiny is required" when the legislative interference involves a public rather than a private obligation. Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1107 (9th Cir.1999).
 
 A. Applicability
 
 21
 Federal law controls whether an agreement constitutes a contract for purposes of Contract Clause analysis. General Motors Corp. v. Romein, 503 U.S. 181, 187, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992); see also State of Nev. Employees Ass'n, Inc. v. Keating, 903 F.2d 1223, 1227 (9th Cir.1990). Here, the parties agree the 1938 Franchise is a "contract" for purposes of Contract Clause analysis. We concur because it embodies a bargain between Santa Ana and the Gas Company. See U.S. Trust, 431 U.S. at 17-18, 97 S.Ct. 1505. Furthermore, the parties agree, and we also conclude, that the Gas Company's claim is properly analyzed under the Contract Clause, rather than as a common breach of contract. See Cayetano, 183 F.3d at 1102-04. Rather than merely resolving a dispute about whether Santa Ana has fulfilled its obligations under the 1938 Franchise, we must determine whether the trench cut ordinance prevents or materially limits the Gas Company's ability to exercise contractual rights. Id.
 
 B. General Standard
 
 22
 To violate the Contract Clause, the trench cut ordinance must substantially impair the 1938 Franchise. Id. at 1101. In that event, the ordinance can nevertheless survive scrutiny if the impairment "was `both reasonable and necessary to fulfill an important public purpose,' such that the impairment is justifiable." Id. at 1106 (quoting Seltzer, 104 F.3d at 236).
 
 1. Substantial Impairment
 
 23
 The Gas Company first argues that the trench cut ordinance substantially impairs the 1938 Franchise because it "double-charges" the Gas Company for rights already granted by the franchise. Pl.'s Mot., p. 12. Second, the trench cut ordinance circumvents the "specific method" in the 1938 Franchise for demanding repairs; it imposes a fee before excavation, before proving actual damage, and without considering the quality of the repairs. Id. In opposition, Santa Ana argues the trench cut ordinance does not impair the 1938 Franchise because the parties anticipated future regulation and provided for such fees in the 1938 Franchise. See, e.g., Def.'s Opp'n to Pl.'s Mot. for Partial Sum. J., ("Def.'s Opp'n"), pp. 9, 12-14.[4] Additionally, even if the ordinance impairs the 1938 Franchise, such impairment is not substantial.
 
 
 24
 To rise to the level of substantial impairment, the trench cut ordinance need not totally destroy the Gas Company's franchise rights. See U.S. Trust, 431 U.S. at 27, 97 S.Ct. 1505. An impairment of a public contract is substantial if it deprives a private party of an important right, see id., thwarts performance of an essential term, Cont'l Ill. Nat'l Bank & Trust Co. v. Washington, 696 F.2d 692, 700 (9th Cir.1983), defeats the expectations of the parties, id., or alters a financial term, see Cayetano, 183 F.3d at 1104; U.S. Trust, 431 U.S. at 25 n. 23, 97 S.Ct. 1505.
 
 
 25
 When assessing substantial impairment, we need not resolve the "question of valuation" in terms of dollars if an important financial provision is impaired. See U.S. Trust, 431 U.S. at 19, 97 S.Ct. 1505; Cont'l Ill. Nat'l Bank & Trust Co., 696 F.2d at 693. For example, in U.S. Trust, the Port Authority of New York and New Jersey repealed a statutory covenant and began to divert revenues and reserves earmarked as security for privately held bonds. 431 U.S. at 3, 97 S.Ct. 1505. Even though the financial effect on the value of the bonds was unclear, the repeal substantially impaired the bondholders' contract because it was an "outright repeal" of "an important security provision...." Id. at 19, 97 S.Ct. 1505. The Court did not determine the amount of the financial harm because there was "no effort to compensate the bondholders for any loss...." Id. at 19, 97 S.Ct. 1505.
 
 
 26
 Even adjustments in implicit financial terms can constitute substantial impairment. In Cayetano, the State of Hawaii enacted a statute that allowed it to delay employees' pay by one to three days on no more than six occasions over one year. 183 F.3d at 1100. Although the "collective bargaining agreement contained no provision regarding specific pay dates," id. at 1100, it was "undisputed that for over twenty-five years it had been the custom and practice of the State to pay its employees" on specific dates, id. at 1099. Based on this past custom, employees had "the right to rely on the timely receipt of their paychecks." Id. at 1106. Moreover, delays could result in substantial hardship for employees. Id. at 1104, 1106. Thus, the impairment was substantial.
 
 
 27
 
 a. Application to trench cut ordinance
 
 
 
 28
 Having considered the trench cut ordinance and 1938 Franchise in their entirety, including the various sections referred to by the parties, we conclude that the trench cut ordinance substantially impairs the Gas Company's rights, obligations and reasonable expectations for two reasons.
 
 
 29
 
 i. Right to excavate
 
 
 
 30
 First, the trench cut ordinance requires the Gas Company to pay for a right it already possesses under the 1938 Franchise — namely the right to conduct excavations without paying an additional fee.[5] According to the preamble and section 2, the purpose of the 1938 Franchise is to authorize the Gas Company "to lay and use pipes and appurtenances ... under... streets...." If Santa Ana can unilaterally increase the cost of exercising this right, then the 1938 Franchise does not secure the principal right it was designed to convey. Other than the franchise fee in section 3, no provision of the 1938 Franchise requires payment of any fees as a condition of the Gas Company's exercise of its rights.
 
 
 31
 Nevertheless, Santa Ana believes section 8(b) of the 1938 Franchise provides for trench cut fees because it allows Santa Ana to "demand[] the cost of all repairs to public property made necessary by any operations of the grantee...." It views the trench cut ordinance as such a demand. Def.'s Statement of Genuine Issues in Opp'n, ¶ 5. Santa Ana does not explain how this interpretation is consistent with the purpose of the franchise or section 10. Upon our review, we find no suggestion that section 8(b) authorizes demands for loss of useful life or future repaving costs.
 
 
 32
 Section 8(b) only covers "repairs." The word "repairs" indicates the damage in question has already occurred. But the trench cut ordinance imposes fees for some harms that may not be realized for over a quarter-century. See Alvarez Decl.
 
 
 33
 ¶ 9 (service life of street with less than three trench cuts is twenty-six years). By referring to the "cost of all repairs," section 8(b) also indicates that the amount recoverable must be for actual harms, not estimated ones as established in the trench cut ordinance.
 
 
 34
 Moreover, while section 8(b) authorizes demands for harms to "public property" in general, section 10 specifically provides remedies for damage to streets. A standard rule of contract interpretation is that when provisions are inconsistent, specific terms control over general ones. See, e.g., Cal.Code Civ. Proc. § 1859 (2001) ("[A] particular intent will control a general one that is inconsistent with it."). Thus, even assuming section 8(b) authorizes demands for as-yet-unrealized estimated future harms, section 10 supercedes it in the context of damage to streets.
 
 
 35
 Regardless, the parties' past practice removes any doubt as to whether Santa Ana can impose trench cut fees. During oral argument, Santa Ana admitted the Gas Company has performed "thousands" of trench cuts since 1938. To Santa Ana's knowledge, the Gas Company always patched trenches in conformity with section 10 of the 1938 Franchise. Santa Ana never demanded further or additional repairs pursuant to section 10, let alone repaving of streets, at least before the 1990s.[6] For more than fifty years, Santa Ana treated patch repairs as adequate to return streets "to as good a condition as existed before" the trench cuts in conformity with the 1938 Franchise. This practice is consistent with the fact that the parties anticipated trench cuts would damage the "foundation" of streets, see Franchise § 9; Def.'s Opp'n, p. 13, yet only provided for "immediate" repairs to be performed by the Gas Company, see Franchise § 10. In light of the 1938 Franchise's language and the parties' past practice, we discern no basis for Santa Ana to impose or "demand" a fee for the loss of useful life or higher costs of repaving.[7]
 
 
 36
 Furthermore, the interference is more substantial than in either Cayetano or U.S. Trust. The statute in Cayetano did not alter the amount of money paid to employees, only the timing, and even then only by a few days and on a limited number of occasions per year. Santa Ana wishes to indefinitely increase the Gas Company's financial obligations beyond those specified in the 1938 Franchise for regularly recurring activities. In U.S. Trust, the financial harm to the bondholders was uncertain but nevertheless substantial because it affected the overall security of the bonds. See U.S. Trust, 431 U.S. at 19, 97 S.Ct. 1505. Here, the additional cost is direct, immediate and measurable and affects a central provision of the franchise.
 
 
 37
 As in U.S. Trust, when considering substantial impairment, we focus on the importance of the term which is impaired, not the dollar amount. Santa Ana has already imposed fees on the Gas Company pursuant to the trench cut ordinance. Alvarez Decl. ¶ 14. Though the fees charged to date are relatively small, Santa Ana was only able to do so by impairing a right at the heart of the 1938 Franchise. Thus, we conclude the trench cut ordinance substantially impairs the Gas Company's right to install and maintain "pipes and appurtenances" under Santa Ana's streets.
 
 
 38
 
 ii. Right to repair
 
 
 
 39
 Separate from the right to excavate, the 1938 Franchise provides that the Gas Company shall repair streets after excavations. See 1938 Franchise §§ 10-11. If repairs are inadequate, Santa Ana may demand the Gas Company commence further repairs within ten days. Id. § 11. Santa Ana can only declare the franchise forfeited if the Gas Company subsequently fails to perform the repairs. Id.
 
 
 40
 In contrast, the trench cut ordinance imposes, in advance, an estimated fee regardless of the actual quality of repairs, without proof of actual harm, and without affording an opportunity to perform repair work. For example, the trench cut ordinance does not adjust fees even though Santa Ana admits high quality trench cuts reduce structural damage. See Alvarez Decl. ¶ 7. By presuming damage regardless of the quality of workmanship, the trench cut ordinance impairs the Gas Company's right to attempt repairs and thereby avoid paying Santa Ana to do so. At the same time, the Gas Company still has the burden of complying with section 10, except it now also incurs fees for future repairs not specified in the 1938 Franchise.
 
 
 41
 The right to fix street damage caused by trenches is closely related to the right to excavate without paying additional fees. By making the repairs, the Gas Company avoids the cost of reimbursing Santa Ana for repairs and the complication of determining the value of such repairs. While not as central as the right to excavate, the impairment is nevertheless substantial. The right to perform repairs relates to the financial burdens assumed by the Gas Company. As a specifically contracted for provision, it is at least as important as the right to receive a paycheck on a particular day, Cayetano, 183 F.3d at 1104, or the right to an additional source of security, U.S. Trust, 431 U.S. at 19, 97 S.Ct. 1505.
 
 
 42
 Consequently, the trench cut ordinance substantially impairs the separate right to repair damage to streets pursuant to sections 10 and 11 of the 1938 Franchise.
 
 
 43
 
 b. Reservation of rights
 
 
 
 44
 Despite the 1938 Franchise's purpose and language and the parties' past practice, Santa Ana argues there is no impairment because of a reservation of rights. Section 8(a) of the 1938 Franchise allegedly subjects the Gas Company's rights to all ordinances "heretofore or hereafter adopted ... in the exercise of [Santa Ana's] police powers...." Id. Read in conjunction with sections 8(b) and 9, Santa Ana contends the Gas Company expressly acknowledged that its rights under the 1938 Franchise could be altered by future police power ordinances.
 
 
 45
 Santa Ana cannot avoid Contract Clause analysis merely by establishing that the trench cut ordinance is an otherwise legitimate exercise of police power.[8] While the 1938 Franchise may acknowledge the need for further regulation pursuant to Santa Ana's police power, it does not enable Santa Ana to adopt ordinances that compromise its material terms. See U.S. Trust, 431 U.S. at 29, 97 S.Ct. 1505. We cannot read the 1938 Franchise in a way that reserves to Santa Ana the power to unilaterally alter the terms of the agreement. Such an interpretation is "absurd;" section 8(a) "cannot be applied as broadly and retrospectively as its literal language may suggest." See Cont'l Ill. Nat'l Bank & Trust Co. v. Washington, 696 F.2d 692, 698-700 (9th Cir.1983); U.S. Trust, 431 U.S. at 25 n. 3, 97 S.Ct. 1505; see also Energy Reserves Group, Inc. v. Kan. Power & Light Co., 459 U.S. 400, 412 n. 14, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) ("When a State itself enters into a contract, it cannot simply walk away from its financial obligations."). Moreover, the existence of this reservation clause in section 8(a) is not indicative of the parties' intentions in this case because a state governmental entity cannot contract away its police powers. See U.S. Trust, 431 U.S. at 23-24, 97 S.Ct. 1505.
 
 
 46
 Nor can it be said that the 1938 Franchise contemplates the future imposition of fees like those imposed by the trench cut ordinance. If anything, the presumption behind the trench cut ordinance cannot be reconciled with the language of the 1938 Franchise. Santa Ana and the trench cut ordinance presume trenched streets can never be returned to their original condition. See, e.g., Def.'s Opp'n, pp. 5-6. However, section 10 requires that the Gas Company "immediately" repair streets to their original condition. If the parties believed or intended that the Gas Company could be charged for future loss of useful life or additional repaving costs, section 10 would not require immediate repair "to as good a condition as existed before...." There is no sense in imposing a duty that can never be fulfilled.
 
 
 47
 
 c. Energy Reserves
 
 
 
 48
 Santa Ana next argues that Energy Reserves is squarely on point and thus an absolute defense. Furthermore, Defendant believes Energy Reserves either reversed or substantially limited the reasoning in U.S. Trust.
 
 
 49
 As in this case, the parties in Energy Reserves made their agreement "subject to relevant present and future state and federal law." 459 U.S. at 416, 103 S.Ct. 697. The Court noted "[t]his latter provision could be interpreted to incorporate all future price regulation, and thus dispose of the Contract Clause claim." However, Energy Reserves mentioned this in the context of impairment of a private agreement, id. at 409, 412-413, 103 S.Ct. 697, whereas the standard of review is more stringent when "the State itself is a contracting party...." Id. at 412-413 & n. 14, 103 S.Ct. 697. As a practical matter, sharing the risk that a neutral third party might act in a manner that affects one's contract is substantially different from allegedly empowering an interested contracting party to alter its agreement at will. As explained above, a contract that allows one party to unilaterally rewrite central terms is not a contract at all.
 
 
 50
 Rather than reverse or limit U.S. Trust, Energy Reserves approves of U.S. Trust's holding and reasoning when state entities interfere with their own obligations. Id. at 412-413 & n. 14, 103 S.Ct. 697. The Ninth Circuit has also concluded that Energy Reserves has "no direct effect on the Supreme Court's holding in [U.S.] Trust Co." State of Nev. Employees' Ass'n, Inc., 903 F.2d at 1226.
 
 
 51
 
 d. Summary of substantial impairment
 
 
 
 52
 The trench cut ordinance imposes an additional financial burden on the Gas Company's right to install and maintain pipes under streets and impairs the Gas Company's right to repair any street damage caused by trenching. Considered individually and/or together, the impairment of these rights is substantial.
 
 2. Reasonable and Necessary
 
 53
 Because Santa Ana has substantially impaired its own contract, it has the burden of establishing that the trench cut ordinance is both reasonable and necessary to an important public purpose. Cayetano, 183 F.3d at 1106. Santa Ana is "not free to consider substantial contractual impairments on a par with other policy alternatives." State of Nev. Employees Ass'n, Inc., 903 F.2d at 1228. "A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." U.S. Trust, 431 U.S. at 26, 97 S.Ct. 1505 (quoted in Cayetano, 183 F.3d at 1107). "[C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." Id. at 26, 97 S.Ct. 1505; see also Cayetano, 183 F.3d at 1107.
 
 
 54
 
 a. Reasonableness
 
 
 
 55
 We generally consider "the extent of the impairment as well as the public purpose to be served." Cayetano, 183 F.3d at 1107 (citing United States Trust Co., 431 U.S. at 29, 97 S.Ct. 1505). However, an "impairment is not a reasonable one if the problem sought to be resolved by an impairment of the contract existed at the time the contractual obligation was incurred." Cayetano, 183 F.3d at 1107 (quoting Ma. Cmty. Coll. v. Commonwealth, 420 Mass. 126, 649 N.E.2d 708, 713 (1995)). Changed circumstances and important government goals do not make an impairment reasonable if the changed circumstances are "of degree and not kind." U.S. Trust, 431 U.S. at 32, 97 S.Ct. 1505.
 
 
 56
 For example, in U.S. Trust, before issuing bonds, the Port Authority was aware of the need for mass transportation and the likelihood that commuter rail-lines would operate at a deficit. Id. at 21, 97 S.Ct. 1505. One covenant securing the bonds prevented the Port Authority from investing in deficit producing commuter railroads. Id. at 3, 31, 97 S.Ct. 1505. Twelve years later, the Port Authority repealed the covenant, partly in response to the national energy crisis of the 1970s. Id. at pp. 13-14, 97 S.Ct. 1505. In addition, public recognition of the importance of "[m]ass transportation, energy conservation, and environmental protection," matters of "important and ... legitimate public concern," had grown. Id. at p. 28, 97 S.Ct. 1505. Despite the established need and important public goals, the Court concluded the repeal violated the Contract Clause: the Port Authority knew of the problems from the outset, and the changed circumstances had not caused the covenant to function in a substantially different manner than intended. See id. at 32, 97 S.Ct. 1505
 
 
 57
 On the other hand, if a statute causes unforeseen and unintended consequences such that private parties would obtain windfalls they never expected, later amendment to realign a statute with the parties' expected bargain may be reasonable. See U.S. Trust, 431 U.S. at 31, 97 S.Ct. 1505 (discussing El Paso v. Simmons, 379 U.S. 497, 515-16, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965)). In El Paso v. Simmons, a 19th century Texas statute regulating government land sales granted defaulting purchasers and their vendees generous redemption rights. With time, these rights created an unexpected "imbroglio over land titles...." Id. at 513, 85 S.Ct. 577. Speculators would often purchase property and immediately default with the intent to reinstate should valuable gas or minerals be discovered. Id. at 512-13, 85 S.Ct. 577. In response, Texas limited the redemption right to the last purchaser and within five years of forfeiture. Id. at 511, 85 S.Ct. 577.
 
 
 58
 In that case, the impairment of the defaulting purchasers' contract rights was reasonable. Id. at 516-17, 85 S.Ct. 577. It could not "seriously be contended that the buyer was substantially induced to enter into these contracts on the basis of a defeasible right to reinstatement in case of his failure to perform, or that he interpreted that right to be of everlasting effect." Id. at 514, 85 S.Ct. 577. Texas' past policy clearly indicated the right did not extend in perpetuity. Id. "A contrary construction would render the buyer's obligations under the contract quite illusory while obliging the State to transfer the land whenever the purchaser decided to comply with the contract...." Id. Limiting redemption to five years was a "mild" burden for purchasers who truly intended to meet their contractual obligations, as opposed to engage in a pattern of defaulting. See id. at 516-17, 85 S.Ct. 577. The mild impairment of the right to speculate was warranted given the problem of clouded land title and the former system's negative effect on Texas' "vital interest in administering its school lands...." Id. at 515, 85 S.Ct. 577.
 
 
 59
 Here, Santa Ana admits the harms covered by the trench cut ordinance were "explicitly anticipated in 1938...." Def.'s Opp'n, p. 13. For example, section 9 requests tunneling or boring, where practicable, rather than excavation "so as not to disturb the foundation of such paved or macadamized street...." As in U.S. Trust where the Port Authority anticipated burgeoning mass transportation needs, Santa Ana admittedly knew that trench cuts damaged streets. Whereas the Port Authority had not anticipated the "degree" of the future need for mass transportation, Santa Ana arguably miscalculated the "degree" of harm to city streets from trench cuts. But Santa Ana cannot alter the 1938 Franchise whenever later studies reveal the extent of damage from trenching is greater than anticipated in 1938. Therefore, to the extent Santa Ana seeks to charge the Gas Company for harms admittedly known in 1938, the trench cut ordinance is unreasonable.
 
 
 60
 In a conclusory fashion, Santa Ana asserts that the trench cut ordinance is reasonable. Def.'s Opp'n, pp. 14-16.[9] Without specific citation or argument based thereon, Santa Ana mentions "its separate statement of disputed facts and Declaration of George Alvarez, the City Engineer." Id. p. 14. Unexplained general references to the record are inadequate, see Fed.R.Civ.P. 56(c); see also Cal. Practice Guide: Federal Civil Procedure Before Trial § 14:101.1, at 14-24.2, especially since Santa Ana has the burden of establishing reasonableness. Cayetano, 183 F.3d at 1106.
 
 
 61
 To the extent Defendant's Statement of Genuine Issues in Opposition refers to six exemptions in the trench cut ordinance, it offers no explanation as to how those exemptions render the impairment reasonable. In any event, Santa Ana has no right to charge the Gas Company for trench cuts repaired in conformity with section 10. It has unilaterally imposed costs that were not assigned to the Gas Company by the 1938 Franchise.[10] The Gas Company has also lost the right to repair streets pursuant to sections 10 and 11. Balanced against these impairments is Santa Ana's desire to shift the costs of street repairs and maintenance onto the Gas Company and improve coordination. These purposes deserve slight consideration because a "governmental entity can always find a use for extra money...." U.S. Trust, 431 U.S. at 26, 97 S.Ct. 1505.
 
 
 62
 Therefore, the trench cut ordinance is unreasonable because damage to streets was foreseen in 1938 and because the extent of infringement is not warranted by Santa Ana's stated goals.
 
 
 63
 
 b. Necessity
 
 
 
 64
 In any event, Santa Ana cannot satisfy its heavy burden on necessity. The trench cut ordinance is not necessary if more moderate alternatives would serve Santa Ana's purposes equally well without impairing the 1938 Franchise. Cayetano, 183 F.3d at 1107; see also U.S. Trust, 431 U.S. at 29-30, 97 S.Ct. 1505. When a state or city impairs its own agreements by imposing additional financial burdens on a private party, obvious more moderate alternatives include raising revenues through higher taxes or preserving funds through budget restrictions. Cayetano, 183 F.3d at 1107. In the last thirty-five years, no Ninth Circuit or Supreme Court case has found a statute or ordinance necessary when the law in question altered a financial term of an agreement to which a state entity was a party. See, e.g., Cayetano, 183 F.3d at 1107; State of Nev. Employees Ass'n, Inc., 903 F.2d at 1228; Cont'l Ill. Nat'l Bank & Trust Co., 696 F.2d at 702; U.S. Trust, 431 U.S. at 29-31, 97 S.Ct. 1505.
 
 
 65
 The one modern exception is El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965). In that case, Texas did not completely repeal or render meaningless the purchasers' redemption rights. The five-year limit was "quite clearly necessary" to cure the problem of clouded title and enable Texas to operate its school lands program, while protecting the purchasers' reasonable expectations. See id. at 515-16, 85 S.Ct. 577; see also U.S. Trust, 431 U.S. at 29-31, 97 S.Ct. 1505 (approving of reasoning in El Paso).
 
 
 66
 The trench cut ordinance is designed to raise revenues to repair and maintain streets as well as encourage coordination among utilities and Santa Ana in the planning of trench cut work and road repairs. Santa Ana has other tools available to raise revenues, such as its taxing power. Santa Ana could also promote and/or require coordination between itself and utilities by, for example, (1) notifying them of planned street work, (2) establishing periodic meetings between their respective representatives, or (3) entering into separate agreements with the utilities to ensure trench cuts are performed during periods when the useful life will not be significantly impacted. In short, numerous alternatives exist, and Santa Ana has not claimed to have exhausted them.
 
 
 67
 As proof of necessity, Santa Ana cites scientific studies describing the harms caused by trench cuts. At oral argument, counsel also pointed out the burden of determining loss of useful life on a case-by-case basis. We do not question the usefulness or practicality of passing a trench cut ordinance. The issue is whether it is necessary to adopt an ordinance that substantially impairs the Gas Company's rights. Unlike El Paso, where limiting the right of redemption was "quite clearly necessary" to resolve the land title problems, Santa Ana does not need to raise funds for street repairs and maintenance through imposition of trench cut fees on the Gas Company. It can designate moneys from its general fund.
 
 
 68
 Santa Ana has failed to explain, nor can we detect from the evidence submitted, why impairment is necessary in this case. If Santa Ana's recognition of higher costs alone sufficed, few if any contracts with government entities would be safe from impairment.
 
 C. Summary
 
 69
 Santa Ana has failed to raise a dispute as to the material facts. Construing the evidence in the light most favorable to Santa Ana, we conclude the Gas Company is entitled to summary judgment as a matter of law on the Contract Clause claim.
 
 V. Disposition
 
 70
 We hereby GRANT Plaintiff's motion for partial summary judgment. As a result, Defendant's motion to dismiss the Contract Clause claim is DENIED. Since Plaintiff stipulates to dismissal of the remaining state and federal claims, Pl.'s Mot., p. 1 n. 1, we decline to rule on the remainder of Defendant's motion. All of the remaining federal and state claims in the First Amended Complaint are hereby DISMISSED without prejudice. See Fed.R.Civ.P. 41(a)(1).
 
 
 71
 IT IS SO ORDERED.
 
 
 
 Notes:
 
 
 [1]
 The ordinance refers to the Southern Counties Gas Company of California, the Gas Company's predecessor in interest
 
 
 [2]
 The parties provided several copies of the 1938 FranchiseSee, e.g., First Amended Complaint Ex. A.; Alvarez Decl. Ex. F.
 
 
 [3]
 Plaintiff's pendant state claims are not directly at issue
 
 
 [4]
 Though we cite to the summary judgment papers, we also considered all arguments bearing on the Contract Clause claim in the motion to dismiss
 
 
 [5]
 While trench cut fees are imposed incident to obtaining a permit, Santa Ana does not claim such fees are based on the cost of providing the permit. Instead, the fees are designed to compensate Santa Ana for the "unavoidable" loss of useful life caused by trench cuts and the additional costs incurred in repaving trenched streets. Santa Ana, Cal., Ordinance No. NS-2480 §§ 1.E-F, 3. Further, the fees are meant to encourage coordination between entities performing trench cuts and the city to minimize damage to streetsId.
 
 
 [6]
 The City Engineer met with "affected utilities regarding the City's proposed trench cut ordinance over a period of several years, beginning in the late 1990's. Representatives of the Southern California Gas Company typically attended these meetings." Alvarez Decl. ¶ 5. Santa Ana does not suggest it held the meetings because the Gas Company failed to perform repairs in compliance with the 1938 Franchise. The meetings were a response to the "large increase in the number of utility trench cuts in the 1990's" experienced by "Santa Ana, along with many other cities...."See id. ¶ 6. This evidence does not indicate trench cut ordinances and/or fees were an established past practice or within the parties' reasonable expectations in 1938.
 
 
 [7]
 Even if we were to assume that the 1938 Franchise is ambiguous, the parties' past practice is wholly inconsistent with Santa Ana's proposed interpretation. The Gas Company and Santa Ana have conducted business for over fifty years without trench cut fees, more than twice the amount of time relied upon by the employees inCayetano. No reasonable trier of fact could resolve the purported ambiguity in Santa Ana's favor.
 
 
 [8]
 We assume for purposes of summary judgment that the trench cut ordinance is a valid exercise of Santa Ana's police powers
 
 
 [9]
 Santa Ana analyzes reasonableness and necessity together, further obscuring the nature of its arguments. Def.'s Opp'n, pp. 14-16
 
 
 [10]
 Moreover, the exemptions appear to be instances when the loss of useful life is marginal or the city's conduct requires the Gas Company to perform trench cuts. The ordinance exempts excavations performed within one year of planned "pavement structural improvements," for trench cuts through sidewalks or concrete, or when city projects otherwise require relocation. Santa Ana, Cal., Ordinance No. NS-2480 § 33.59. In short, Santa Ana only exempts trench cuts when it is cheap for it to do so. However, unlike the statute inEl Paso, the exemptions bear no relation to the parties' expectations about the distribution of benefits and burdens under the 1938 Franchise.
 
 
 THOMAS, Circuit Judge, concurring:
 
 72
 I concur in the judgment. However, I would affirm the district court on narrower grounds.
 
 
 73
 I agree that, under the circumstances presented by this case, the franchise agreement between the City of Santa Ana ("City") and Southern California Gas Company ("Gas Company") functions as a contract. I also agree that the City was prohibited from using its police power to alter unilaterally the terms of the contract. Thus, the question is whether the trench ordinance impairs the contract, and does so in a manner that violates the Contract Clause. U.S. Const., art. I, § 10.
 
 
 74
 To prove a violation of the Contracts Clause, the Gas Company must show that the City has substantially impaired the franchise agreement. "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Gen. Motors Corp. v. Romein, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). If the trench cut ordinance does substantially impair the franchise agreement, the burden shifts to the City to show that the statute is "both reasonable and necessary to fulfill an important public purpose such that the impairment is justifiable." Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1106 (9th Cir.1999) (internal quotations omitted). If the City meets this burden, the statute will not violate the Contracts Clause. Whether the Gas Company has suffered a substantial impairment turns on whether the exercise of the police power in this case materially changed the terms of the contract.
 
 
 75
 The district court largely analyzed this case under § 10 of the franchise agreement. However, to me, the key contract clause is § 8(b), not § 10. Unlike the district court, I am not persuaded that § 10 exclusively controls the less immediate repairs at issue here. More plausibly, § 10 covers the initial patches needed to cover up the trenches themselves, while § 8(b) covers other repairs, including those made necessary by long term damage. Specifically, § 8(b) provides that the Gas Company shall "pay to the City, on demand, the cost of all repairs to public property made necessary by any operations of the grantee under this franchise." Thus, by its terms, the City had the right to extract from the Gas Company the cost of public repairs at issue in this case. However, nothing in the franchise agreement provided the City the right to assess these costs in advance, nor to allocate estimated total costs of repair for all projects in the form of a fee unrelated to the specific damages caused by the Gas Company on a particular project.
 
 
 76
 Applying Contract Clause analysis to the undisputed facts, I would conclude that there is a contractual relationship, that the change in the law impaired the contractual relationship, and that the impairment is substantial. With that conclusion, the burden shifts to the City to show that the ordinance is "both reasonable and necessary to fulfill an important public purpose such that the impairment is justifiable." Cayetano, 183 F.3d at 1106.
 
 
 77
 In my opinion, the City presented enough evidence to demonstrate the significant long term, hidden costs of trench cuts and the failure of the current franchise agreement to compensate it for these costs, largely unforeseen in 1938. Although the parties anticipated some damage to street foundation in 1938, the City discovered new evidence in the 1990's of long term structural damage following successful patch completion as well as unforeseen increases in pavement thickness and frequency of repaving. However, the City did not tender sufficient evidence to create a genuine issue of material fact that the trench fee ordinance has been sufficiently tailored to address only these costs. Thus, I agree that the judgment of the district court should be affirmed, albeit on different grounds. I write separately because of my concern that a more sweeping application of the Contracts Clause in this context will mean that the City, and those similarly situated, may be unnecessarily and inappropriately precluded from recovering the legitimate costs of structural damage under a more narrowly tailored approach.