NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 28 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LL LIQUOR, INC., DBA Lolo Liquor, | No. 17-35405 |
| Plaintiff-Appellant, | D.C. No. 6:15-cv-00071-SEH |
| v. | |
| STATE OF MONTANA; STEVE BULLOCK, in his official capacity as the Governor of Montana; MONTANA DEPARTMENT OF REVENUE; MIKE KADAS, in his official capacity as the Director of the Montana Department of Revenue; JOHN DOES, 1 through 10, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted May 15, 2018
Seattle, Washington

Before: BERZON, THACKER,** and HURWITZ, Circuit Judges.

LL Liquor, Inc., which does business as "Lolo Liquor," appeals the district

---

*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**      The Honorable Stephanie Dawn Thacker, United States Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

court's grant of summary judgment to the state of Montana for breach of contract under state law. As a state-approved "agency franchise store," Lolo Liquor must purchase its liquor from the Montana Department of Revenue (DOR). Until 2016, the price of liquor was determined by the "agency franchise agreement," a contract negotiated between the DOR and the individual store. In 2016, two years into the term of Lolo Liquor's agreement, Montana passed Senate Bill (SB) 193, which applied a uniform pricing scheme to all stores, thereby overriding the price negotiated by Lolo Liquor. The district court concluded that Montana's passage of SB 193 did not breach the agreement and granted summary judgment to Montana on Lolo Liquor's breach-of-contract claim. We reverse.[1]

1.       The district court concluded that the agency franchise agreement was "unambiguous" and did not contain a promise that the commission rate would be changed "only with the consent of the franchisee during the ten-year term of the contract." We disagree. The contract did contain such a promise.

Section 2 of the agreement, which specified that the commission rate set forth in section 5 "may be reviewed every three years, as provided by law," provided a specific mechanism for modifications of the commission rate during the

---

[1] Lolo Liquor also appeals the district court's grant of summary judgment on its claim under the Contracts Clause of the U.S. Constitution. We affirm on that claim in a concurrently filed opinion.

term of the agreement. This language included a citation to section 16-2-101(6) of the Montana Code, which in 2013 stated that a commission rate "may be reviewed every 3 years at the request of either party" but also provided that the rate would change only with the franchise store's consent. Mont. Code Ann. § 16-2-101(6)(a) (2013).[2]

Another part of section 2 noted that, "for *future* renewals," the agreement *could* be modified based on "[s]ubsequent changes to the law" (emphasis added). The negative implication of this language, which appears in the same section as the specific allusion to protection of the commission rate, is that changes in law as to the key financial provision of the agreement were permissible with regard to future agreements but not the current one.

Considered together, the most reasonable interpretation of these provisions is that, contrary to the district court's conclusion, section 2 *did* contain a promise: During the term of the agreement, the commission rate could be adjusted every three years, but only with the consent of the franchise store. Without the franchise store's consent, changes to the commission rate could take effect, if at all, only for future renewals.

---

[2] Although SB 193 amended this provision, under Montana law, "laws existing at the time a contract is formed become part of the contract" where, as here, the statutory provision is an "integral component" of the contract. *Earls v. Chase Bank of Tex., N.A.*, 59 P.3d 364, 366 (Mont. 2002).

**2.** The specific promise in section 2 concerning the stability of the commission rate during the term of the agreement was not overridden by section 11 of the agreement. Section 11 provided that "the [DOR] may amend or modify this Agreement to conform to changes in state or federal laws" and that "any change required by a change in Montana law shall be effective immediately upon the effective date of such change in law, notwithstanding the failure of a party to agree in writing to such change."

Under Montana law, "a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Mont. Code Ann. § 28-3-301 (2017). Here, the context of the parties' negotiations strongly suggests that the parties did not contemplate that the commission rate was modifiable at will. Notably, the commission rate in section 5 was the *only* financial term included in the entire agreement. As the record demonstrates, the term was critical to Lolo Liquor's business plan and to the success of Lolo Liquor's business. Given the central importance of that term and of section 2's preservation of the term, we doubt that, by agreeing to section 11, Lolo Liquor "unwittingly welcomed a Trojan Horse containing within itself the seeds of destruction of its own business." *Pure Wafer Inc. v. City of Prescott*, 845 F.3d 943, 958 (9th Cir. 2017).

Moreover, the provision at issue in section 11 is extremely general, applying

4

to "*any* change required by a change in Montana law" (emphasis added). The provision does not specifically address the commission rate or expressly authorize unilateral changes to that rate. Section 2, by contrast, spelled out the specific manner in which the commission rate could be modified, both during the term of the agreement and for future renewals. It is "[a] standard rule of contract interpretation . . . that when provisions are inconsistent, specific terms control over general ones." *S. Cal. Gas Co. v. City of Santa Monica*, 336 F.3d 891 (9th Cir. 2003); *see also* Mont. Code Ann. § 1-3-225 (2017) ("Particular expressions qualify those which are general."). The contrast in specificity between section 2, which expressly discussed changes to the commission rate, and section 11, which did not, cuts strongly against Montana's interpretation of the agreement.

Finally, section 2 already provided specific mechanisms for adjusting the commission rate, both during the term of the contract and for future renewals. Montana's interpretation of section 11 would bypass those established mechanisms, allowing the state to adjust the commission rate at will through legislation. If section 11 required all changes in Montana law to take effect immediately, then the language in section 2 protecting against unilateral changes in the commission rate would appear to be largely superfluous—any such changes would take effect right away, not every three years with permission, and not for future renewals without permission. Under Montana law, "[t]he whole of a contract

is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Mont. Code Ann. § 28-3-202 (2017). The superfluities created by Montana's sweeping interpretation of section 11 only further undermine the state's argument.

**3.** For the foregoing reasons, we conclude that, with respect to the commission rate, the agency franchise agreement is susceptible to only one reasonable interpretation—that Montana promised that Lolo Liquor's commission rate would not change during the term of the agreement without Lolo Liquor's consent. SB 193's enactment broke that promise and thus breached the agreement. On remand, the district court should determine the appropriate remedy for Lolo Liquor under state law.[3]

**REVERSED and REMANDED.**

---

[3] Because we conclude that Montana breached its agreement with Lolo Liquor, we do not reach Lolo Liquor's alternative argument that the state breached the covenant of good faith and fair dealing.

*LL Liquor, Inc. v. State of Montana*, 17-35405

HURWITZ, Circuit Judge, dissenting:

I agree with the majority that the ultimate issue for decision is whether, applying Montana law, the district court correctly held that the MDOR did not breach its contract with Lolo. But, I think the district court correctly found no breach of contract, and therefore respectfully dissent.

Section 11 of the contract between MDOR and Lolo clearly provides that "the Department may amend or modify this Agreement to conform to changes in state or federal laws," and that "any change required by a change in Montana law shall be effective immediately upon the effective date of such change in law." At the time the contract was signed, Montana law allowed MDOR to negotiate commission rates with distributors such as Lolo. Mont. Code Ann. § 16-2-101(4)(a)(i)(B) (2009). But, in 2015, the Governor signed a bill specifying the commission rates applicable to distributor contracts. Act of Apr. 29, 2015, Ch. 362 § 2, 2015 Mont. Laws 1581, 1582–83. In accordance with its plain language, the Lolo-MDOR agreement was automatically modified by the new state law.

Notably, the majority does not contend that an agreement providing for automatic modification upon the passage of a subsequent statute would be unenforceable under Montana contract law. Nor does the majority suggest that the 2015 Montana statute did not, on its face, cover the Lolo-MDOR contract. *See* Mont.

Code Ann. § 16-2-101(4) (2015) (providing for "*each* agency liquor store's commission rate") (emphasis added). Rather, the majority holds that Section 11 can't really mean what it says. That conclusion rests heavily on the majority's perception that Section 2 of the contract, which provides that "[s]ubsequent changes to the law by the legislature may require terms to change in future renewals of the agreement," is a "negative implication" that any changes in state law could not impact the commissions during the contract's current term. But, Section 2 deals with renewals, not modifications during the term of the agreement; Section 11 deals expressly with modifications during the contractual term, and plainly requires modifications in accordance with state law. And, in any event, there is no conflict between Sections 2 and 11. Read sensibly, Section 2 merely reinforces the point made in Section 11—the contract, whether during the course of its original term or after renewal, is always subject to changes in state law in this highly regulated area.

Nor does the final part of Section 2 suggest a different result. It simply provides that "[d]uring the term of this Agreement, the commission percentage discount rate may be reviewed every three years, as provided by law." That language simply allows the parties—in accordance with governing state law—to review the commission rate periodically. It does not promise that the commission rate will not change if a law so requiring is passed during the contract term; indeed, it emphasizes that the contract can be changed by subsequent state law.

Montana law requires that we enforce the contract as written. *See Mary J. Baker Revocable Tr. v. Cenex Harvest States, Coops., Inc.*, 164 P.3d 851, 857 (Mont. 2007) ("If the language of a contract is unambiguous—i.e., reasonably susceptible to only one construction—the duty of the court is to apply the language as written."). Had a Montana statute *increased* commission rates during the ten-year term of the agreement, Lolo would surely insist that it was entitled under Section 11 to the benefit of that legislation. And, Lolo would be correct, because that is precisely what it and the MDOR agreed to. The converse is also true. I would therefore affirm the judgment of the district court. I respectfully dissent.